# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| TYLER REGIONAL HOSPITAL, LLC, doing business as UT HEALTH TYLER, 1000 S. Beckham Avenue Tyler, Texas 75701, <br><br> EAST TEXAS HEALTH SYSTEM, LLC, 1 Burton Hills Blvd., Suite 250 Nashville, Tennessee 37215, <br><br>   Plaintiffs, <br><br>   v. <br><br> DEPARTMENT OF HEALTH AND HUMAN SERVICES, 200 Independence Avenue SW Washington, DC 20201, <br><br> XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, 200 Independence Avenue SW Washington, DC 20201, <br><br> HEALTH RESOURCES AND SERVICES ADMINISTRATION, 5600 Fishers Lane Rockville, MD 20857, <br><br> CAROLE JOHNSON, in her official capacity as Administrator of Health Resources and Services Administration, 5600 Fishers Lane Rockville, MD 20857, <br><br>   Defendants. | Civil Action No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Tyler Regional Hospital, LLC, doing business as UT Health Tyler (hereinafter "UT Health Tyler" or the "Hospital"), and East Texas Health System, LLC (hereinafter "East Texas Health"), by and through their attorneys, allege and state as follows:

## INTRODUCTION

1. This action concerns a typographical error and agency intransigence.

2. Plaintiffs bring this action to challenge the unlawful withholding of congressionally mandated federal assistance by Defendants Department of Health and Human Services ("HHS"), Secretary of HHS Xavier Becerra, the Health Resources and Services Administration ("HRSA"), and HRSA Administrator Carole Johnson, due to a typo in Plaintiffs' funding application.

3. The American Rescue Plan ("ARP") Act of 2021, Pub. L. No. 117-2, 135 Stat. 4 (Mar. 11, 2021), recognized that rural health-care providers bore a disproportionate share of the burden of responding to the COVID-19 pandemic and provided for payments to reimburse them for expenses and lost revenues. These rural-focused payments supplement other economic relief funding for health care providers affected by the COVID-19 pandemic, including Provider Relief Fund ("PRF") funding appropriated by Congress through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act of 2020, Pub. L. 116-136, 134 Stat. 281 (March 27, 2020) and subsequent legislation.

4. UT Health Tyler is an acute care hospital that serves a substantial rural and low-income population in east Texas.

5. UT Health Tyler incurred significant health-care-related expenses and experienced significant lost revenues as a direct result of the COVID–19 pandemic. UT Health Tyler has applied for, and has been awarded, funding from the PRF to help offset expenses and lost revenues.

2

6. As a Medicare- and Medicaid-enrolled health-care provider that cared for rural patients with possible or actual cases of COVID-19, UT Health Tyler qualifies for assistance through the ARP Act provision for payments to rural providers.  Under HRSA's payment methodology, UT Health Tyler is entitled to receive millions of dollars in relief funding.  Indeed, of the ten related entities who applied for funds in a consolidated application, nine of the ten were approved for ARP Rural payments and received millions of dollars—all except UT Health Tyler.

7. HRSA denied UT Health Tyler's application for an ARP Rural Payment not for any substantive reason, but merely because one digit of the Hospital's Taxpayer Identification Number ("TIN") was entered incorrectly on the application, due to a typographical error.

8. Although UT Health Tyler immediately alerted HRSA to the typographical error and asked HRSA to reconsider UT Health Tyler's application using the correct TIN, HRSA has refused to reconsider its decision, stating that it will not permit revision to an application after its submission.

9. Due to the agency's intransigence, UT Health Tyler has been deprived of assistance for which it plainly qualifies.  Like hospitals around the country, UT Health Tyler was severely strained during the pandemic and was counting on the ARP Rural Payment.  Indeed, helping hospitals that served rural populations during the pandemic is precisely the intended purpose of the ARP Rural Payments.

10. Making matters worse, the ARP program is a limited appropriation, and may eventually run out of funds.  The agency's unwillingness to help in a timely manner thus risks UT Health Tyler's ability to *ever* obtain the relief to which it is entitled.

11. The Court should grant Plaintiffs' claim for relief and enjoin the agencies to grant the relief to the Hospital without further delay.

**JURISDICTION AND VENUE**

12. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 5 U.S.C. §§ 701–706 (the Administrative Procedure Act ("APA")).

13. The Court has the authority to grant the requested declaratory and injunctive relief under the APA, 5 U.S.C. § 702, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and this Court's inherent equitable powers.

14. UT Health Tyler is located in Tyler, Texas, and therefore venue is proper in this district under 28 U.S.C. § 1391.

**PARTIES**

15. Plaintiff Tyler Regional Hospital, LLC, doing business as UT Health Tyler, is a Medicare-enrolled, 502-bed acute care hospital in Tyler, Texas. UT Health Tyler serves a substantial rural population in eastern Texas outside of Tyler. During the pandemic, UT Health Tyler provided diagnosis, testing, and care of patients with possible and actual cases of COVID-19.

16. Plaintiff East Texas Health System, LLC is the controlling affiliate of a group of hospitals in east Texas, including Plaintiff UT Health Tyler. East Texas Health submitted an application on behalf of these hospitals for PRF and ARP Rural Payments.

17. Defendant Department of Health and Human Services is an executive department of the United States headquartered in Washington, D.C.

18. Defendant Xavier Becerra is the Secretary of Health and Human Services. Secretary Becerra is sued in his official capacity only.

19. Defendant Health Resources and Services Administration is an agency of HHS, and is tasked with administering funding from Congress to reimburse health-care providers for health-

care-related expenses or lost revenues attributable to coronavirus, including distributions from the PRF and ARP Rural Payments.

20. Defendant Carole Johnson is Administrator of HRSA.  Administrator Johnson is sued in her official capacity only.

## BACKGROUND

### A. American Rescue Plan Rural Payments

21. The ARP Act addresses the disproportionate impact of the COVID-19 pandemic on rural communities and rural health-care providers, among other things.  Pub. L. No. 117-2 § 9911. The Act amended the Social Security Act to appropriate $8.5 billion for payments to rural health-care providers enrolled in Medicare, Medicaid, or a State child health plan ("CHIP") to cover health-care-related expenses and lost revenues attributable to their response to the COVID-19 pandemic.  *See id.*, *codified at* 42 U.S.C. § 1320b-26.

22. The ARP Act directed the HHS Secretary to distribute ARP Rural Payments.  42 U.S.C. § 1320b-26(a).  The HHS Secretary distributes the payments through HRSA's Provider Relief Bureau, which also distributes PRF payments appropriated by the CARES Act, and subsequent legislation.

23. To qualify for an ARP Rural Payment, a provider must:  be enrolled in Medicare, Medicaid, or CHIP; provide diagnoses, testing, or care for individuals with possible or actual cases of COVID-19; and be a rural provider.  42 U.S.C. § 1320b-26(b)(3)(1); *see* HRSA, Provider Relief Programs: Provider Relief Fund and ARP Rural Payments, Frequently Asked Questions 73 (last updated 1/30/2023), https://www.hrsa.gov/sites/default/files/hrsa/provider-relief/provider-relief-fund-faq-complete.pdf.  A provider that serves at least one rural patient qualifies as a rural provider. *See* 42 U.S.C. § 1320b-26(e)(5)(B); HRSA, Phase 4 General Distribution and ARP Rural Payments Application Instructions, Payment Methodology, Provider Relief Fund Phase 4 Payment

Overview, https://www.hrsa.gov/provider-relief/future-payments/phase-4-arp-rural/payment-methodology.

24. HRSA used a single application portal to assist in making $8.5 billion in ARP Rural payments and $17 billion in PRF payments ("Phase 4 General Distribution payments"). HRSA began accepting applications on September 29, 2021. HRSA instructed providers to apply at the parent or filing TIN level, meaning that providers with a common parent would submit a single application under the parent's TIN. Subsidiary TINs were to be listed in the application. HRSA, Phase 4 General Distribution and ARP Rural Payments Application Instructions, https://www.hrsa.gov/provider-relief/future-payments/phase-4-arp-rural.

25. According to its published methodology, HRSA first undertook a "TIN Validation" process, which is a program integrity measure that ensures applicants are "known businesses" and "eligible for funds." HRSA, PRF General Distribution and ARP Rural FAQ, https://www.hrsa.gov/provider-relief/faq/general-distribution. In the first step of the TIN validation process, HRSA checked an applicant's TINs "against Internal Revenue Service (IRS) data in order to ensure that the TIN submitted was a valid, registered TIN and was associated with the correct name on the provider's tax return." HRSA, Payment Methodology. Providers that passed the IRS validation advanced to a "TIN Validation." *Id.* In the TIN Validation, HRSA verified that the provider was a "known provider" by checking "a list of 1.4 million TINs associated with valid Medicare, Medicaid, [CHIP], dental, behavioral health, and other eligible providers (i.e., the 'curated list of providers')." *Id.* If the provider appeared on the curated list, the applicant was invited to complete and submit its application through the online portal. *Id.*

### B. UT Health Tyler's Extensive Participation in HHS-Administered Programs and Prior Disbursements from HRSA

26. UT Health Tyler is a known provider to HRSA and HHS, and has received funding in prior phases of PRF distributions.

27. UT Health Tyler was awarded funds through the PRF Phase 4 Distribution, pursuant to the very same application that HRSA now claims is deficient.

28. UT Health Tyler is also party to a Medicare provider agreement with the Centers for Medicare & Medicaid Services ("CMS"), an agency within HHS that administers the Medicare program.

29. CMS routinely makes Medicare payments to UT Health Tyler under UT Health Tyler's correct TIN.

### C. UT Health Tyler's ARP Rural Payment Application

30. On October 23, 2021, East Texas Health timely submitted a consolidated application for PRF Phase 4 and ARP Rural Payments on behalf of its ten subsidiaries, including UT Health Tyler.

31. UT Health Tyler met all of the eligibility criteria for an ARP Rural Payment, including that it is enrolled in Medicare, Texas Medicaid, and CHIP; has provided diagnoses, testing, and care for patients with possible and actual cases of COVID-19; and serves rural patients.

32. During the application process and prior to submission of East Texas Health's consolidated application, HRSA's application portal indicated with a green "check mark" that HRSA had completed TIN Validation for East Texas Health's application. Upon completion of the TIN Validation, East Texas Health was able to complete and submit the application.

33. Nine of the ten subsidiaries listed in East Texas Health's consolidated application received ARP Rural payments—all except UT Health Tyler. Those payments totaled over $9 million for the nine recipients.

34. Upon discovering that UT Health Tyler did not receive an ARP Rural Payment, Plaintiffs contacted HRSA multiple times to report their concern and request assistance in obtaining the payment. For example, Plaintiffs telephoned HRSA's Provider Support Line and followed up with a letter on January 21, 2022. HRSA responded on February 17, 2022, but identified no specific reason for delay and instead directed UT Health Tyler to establish a payment account to receive the funds.

35. Plaintiffs sent subsequent letters dated February 22, 2022, and May 11, 2022, and sent multiple emails.

36. Plaintiffs also asked Defendants to reconsider the denial of UT Health Tyler's ARP Rural Payment application on May 2, 2022.

37. By letter dated June 16, 2022, HRSA finally responded, stating that "according to our records, there are no Medicare, Medicaid, or Children's Health Insurance Program claims associated with TIN *5395 for UT Health." HRSA continued: "[I]n reviewing the tax records included with East Texas Health System, LLC's application, … it is unclear as to the correct TIN for UT Health." HRSA's letter additionally stated "UT Health can submit an ARP Rural Payment Reconsideration Request," but added, "[h]owever, they are not able to change any previously submitted information, including the TINs listed."

38. After receiving HRSA's June 16, 2022 letter, Plaintiffs discovered that UT Health Tyler's TIN had been inadvertently mis-typed and was off by one digit.

39. On July 27, 2022, Plaintiffs wrote to HRSA explaining the typographical error, pointing out that HRSA should now have sufficient information to process an ARP Rural Payment to UT Health Tyler (including records of Medicare, Medicaid, and CHIP claims for UT Health Tyler associated with its correct TIN), and reiterating Plaintiffs' request that HRSA issue an ARP Rural Payment to UT Health Tyler.

### D. HRSA's Denial Decision and Refusal to Allow Correction of the Typographical Error

40. By letter dated August 11, 2022, HRSA's Deputy Associate Administrator rejected Plaintiffs' request for an ARP Rural Payment for UT Health Tyler.

41. HRSA acknowledged that Plaintiffs had advised that they "made a typo" in entering UT Health Tyler's TIN.

42. But HRSA refused Plaintiffs' request for the typo to be corrected, stating that "[i]n order to ensure equitable and consistent treatment of all providers, HRSA cannot permit providers to revise their applications after they are submitted."

43. On August 18, 2022, Plaintiffs wrote to HHS's General Counsel emphasizing that the typographical error submitted with UT Health Tyler's ARP Rural Payment application did not affect the Hospital's eligibility, given that HRSA had validated the TIN used to submit the application. Plaintiffs again asked HRSA to issue UT Health Tyler an ARP Rural Payment.

44. On September 8, 2022, Plaintiffs received an acknowledgement of their August 18, 2022 letter by the HHS General Counsel. But Plaintiffs were subsequently informed by HHS officials that HRSA will not be providing UT Health Tyler its ARP Rural Payment.

45. To date, UT Health Tyler has not received the ARP Rural Payment to which it is entitled.

**CLAIMS FOR RELIEF**

46. The courts recognize a strong presumption favoring judicial review of administrative action.

47. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

48. The APA further provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

49. In addition, the APA permits courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

50. Finally, the APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

**COUNT I—ARBITRARY AND CAPRICIOUS AGENCY ACTION**

51. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs and allegations.

52. Reasoned decisionmaking requires an agency to examine the relevant data and provide an explanation that makes a rational connection between the facts found and the agency's decision. An explanation for a decision that runs counter to the evidence before the agency is arbitrary and capricious. A decision that falls outside the zone of reasonableness is similarly arbitrary and capricious.

53. Defendants have never disputed that UT Health Tyler meets all the criteria for an ARP Rural Payment, including that it is enrolled in Medicare, Texas Medicaid, and Texas CHIP;

has provided diagnoses, testing, and care for patients with possible and actual cases of COVID-19; and serves rural patients.

54. But for the single-digit typographical error, Plaintiffs followed all applicable instructions in submitting the consolidated application for ARP Rural Payments for UT Health Tyler.

55. But for the single-digit typographical error, therefore, UT Tyler Health would have already received its ARP Rural Payment totaling millions of dollars.

56. Defendants acted arbitrarily, capriciously, and contrary to law in disregarding all of the evidence of UT Health Tyler's undisputed satisfaction of the eligibility requirements for an ARP Rural Payment and in denying its ARP Rural Payment due to a typographical error.

## COUNT II—AGENCY ACTION CONTRARY TO LAW

57. Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs and allegations.

58. UT Health Tyler's ARP Rural Payment application demonstrated that the Hospital meets all the eligibility requirements for an ARP Rural Payment.

59. Under the ARP Act, therefore, UT Health Tyler is entitled to an ARP Rural Payment.  42 U.S.C. § 1320-26.

60. Defendants' refusal to award UT Health Tyler an ARP Rural Payment is contrary to the ARP Act and, thus, contrary to law.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully requests that this Court:

1. Declare unlawful and set aside Defendants' denial of UT Health Tyler's ARP Rural Payment application;

2. Order Defendants to process UT Health Tyler's ARP Rural Payment application using the Hospital's correct TIN, 82-3878395;

3. Order Defendants to preserve ARP Rural Payment funds in an amount equal to what Defendants would have paid in January 2022, plus interest;

4. Order Defendants to award UT Health Tyler an ARP Rural Payment in an amount equal to what Defendants would have paid in January 2022, plus interest;

5. Award UT Health Tyler its costs and reasonable attorney fees; and

6. Grant such other and further relief as the Court deems just and proper.

Dated March 16, 2023                      Respectfully submitted,

                                               /s *Laura P. Warrick*
Laura P. Warrick
  Texas Bar No. 24079546
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com

James E. Tysse (Lead Attorney)
  D.C. Bar No. 978722 (*pro hac vice* to be filed)
Kelly M. Cleary
  D.C. Bar No. 985642 (*pro hac vice* to be filed)
Caroline L. Wolverton
  D.C. Bar No. 496433 (*pro hac vice* to be filed)
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com
kcleary@akingump.com
cwolverton@akingump.com

*Counsel to Plaintiffs UT Health Tyler and East Texas Health System, LLC*