IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| TYLER REGIONAL HOSPITAL, LLC, doing business as UT HEALTH TYLER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> Defendants. | Civil Action No. 6:23-cv-00134-JCB <br><br> Judge Campbell Barker |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY
MOTION FOR SUMMARY JUDGMENT**

To err is human, even with important numbers like Tax Identification Numbers ("TINs"), and even for people working for sophisticated entities like federal courts and rural hospitals. Even, in fact, for people representing the U.S. government. On page 14 of Defendants' Response (ECF No. 19), government counsel made a typo in reciting the payment amount Plaintiffs seek, rendering that 8-digit number off by one digit.[1]

Luckily, such minor typographical errors are routinely fixed without further ado. Indeed, agencies have an obligation to fix, or to allow applicants to fix, such errors—at least absent clear notice that the agency will refuse to do so. But Defendants gave no such notice here. Instead, they penalized Plaintiffs' regrettable (but understandable) error in entering one of eleven providers' nine-digit TINs into Defendants' online portal. Rather than simply fixing the clerical error—something governments, courts, businesses, and individuals do countless times each day—the

---

[1] Defendants state the amount Plaintiffs claim as $9,688,1**6**9 at line 11 of page 14, rather than the $9,688,1**9**9 Plaintiffs are owed, *see* Mot. 15, 22, 23 & Decl. of T. Miner ¶¶ 26, 27, 32.

1

government has taken the unreasonable and unfair position that a clerical slip-up should result in denial of millions of dollars in critical relief funds that Congress made available for the hospitals that cared for rural populations during the COVID-19 pandemic.  And Defendants have done so despite conceding that Plaintiff UT Health Tyler both is a "known provider" to the Health Resources and Services Administration ("HRSA") (given its years-long participation in Medicare and other federal programs), and is otherwise fully eligible for a payment from the American Rescue Plan rural hospitals fund ("ARP Rural Payment").

Although Plaintiffs sought to resolve this amicably, without court intervention, the government's position, and the looming rescission of relief funds, left Plaintiffs no choice but to call upon this Court's time and resources.  Plaintiffs respectfully request that the Court grant them summary judgment, order the agency to obligate the funds it owes, and put this matter to rest.

## ARGUMENT

**I.  EMERGENCY CONSIDERATION IS NECESSARY**

Far from a "speculative" emergency, Resp. 2, the U.S. House of Representatives passed a bill that includes rescission of the appropriation for ARP Rural Payments in late April.  *See* Mot. 7.  Although negotiations are in flux, last Tuesday—the day after Plaintiffs filed their emergency motion—President Biden publicly confirmed that such a rescission is squarely on the table.  *See* Andrew Restuccia and Natalie Andrews, The Wall Street Journal, *White House Debt-Ceiling Meeting Fails to Yield Breakthrough as Deadline Nears* (May 9, 2023) ("Mr. Biden said he was open to the idea, proposed by Republicans, of clawing back some unspent Covid-19 aid funds.").

The government disputes how likely rescission is.  But the seriousness of the harm Plaintiffs face—loss of millions in needed relief funding—requires immediate action.  Plaintiffs do not have the luxury of waiting to see if a rescission that has already passed one chamber, and that is the subject of active negotiations, will materialize.  Notably, Defendants offer no assurance

2

that the amount Plaintiffs seek can be preserved if this case were to proceed on a normal schedule.[2]

## II. PLAINTIFFS' CLAIMS ARE RIPE

Defendants insist that this case is not ripe for adjudication because "[t]o date, HRSA has not issued a decision on East Texas Health's reconsideration request"—a request that was made on May 2, 2022, *before* UT Health Tyler was aware of the typo in the TIN number. Resp. 14. But Defendants make this assertion after the *one-year anniversary* of UT Health Tyler's reconsideration request, *see* Ex. D to Miner Decl., after Defendants have represented that funds are rapidly depleting, Huttinger Decl. ¶ 86 ("It is possible that [other pending] reconsideration requests will deplete the remaining funds."), after rescission of funding is actively being negotiated, and after Defendants have unequivocally represented in correspondence that they will not permit UT Health Tyler to make *any* modification to its application.

In these circumstances, exhaustion is plainly not required. Administrative exhaustion should be excused where (1) the agency has "predetermined the issue before it" or (2) there is a "danger of the plaintiff suffering irreparable harm." *Edwards v. Johnson*, 209 F.3d 772, 777 (5th Cir. 2000). Both exceptions apply here. HRSA has "predetermined the issue" as evidenced by its unequivocal statement, first in correspondence and then in briefing, that it will not permit correction of the application typos that were the basis for denial. *See* Resp. 11 ("the reconsideration process does not permit requestors to change any previously submitted information, including the TINs listed" (quoting Huttinger Decl. ¶ 67)); *see also* Huttinger Decl.

---

[2] Defendants seriously mischaracterize Plaintiffs' supposed delay after passage of the House's rescission bill. *See* Resp. 4. On Friday, April 28—two days after passage—Plaintiffs' counsel contacted government counsel as a courtesy to inform them of the plan to seek early summary judgment. On Monday, May 1, Defendants asked for time to propose a briefing schedule. Plaintiffs waited four days for Defendants to finally propose an unrealistic schedule that would stretch briefing to *July*. Plaintiffs filed their emergency motion the next business day.

¶ 77 (same).  UT Health Tyler also satisfies the second exhaustion exception because it faces "danger of . . . suffering irreparable harm" in the form of rescission of the ARP Rural Payment appropriation.  *Edwards*, 209 F.3d at 777.

In short, nothing would be gained, and all could be lost, by awaiting the preordained outcome of the reconsideration process.  Defendants should not be permitted to "run out the clock" by refusing to decide a reconsideration petition Plaintiffs submitted more than a year ago.

## III.     THERE ARE NO DISPUTED MATERIAL FACTS

### A.     There Is No Material Dispute About Payment Amount

That Plaintiffs undisputedly lack access to the data HRSA uses to calculate the precise payment amount does not mean there is a material dispute of fact requiring denial of summary judgment.  Contrary to the government's accusations of "speculation," Resp. 3, the Miner Declaration (at ¶¶ 26-32) details the basis for Plaintiffs' $9.68 million estimate of the payment amount, as well as the reason why only an "estimate" is available (*i.e.*, because the government is in sole possession of some relevant data).  Nevertheless, Plaintiffs believe their estimate to be accurate, and in line with similarly sized hospitals serving similar rural populations.[3]

Defendants claim that amount is wrong, but fail to meet their summary judgment burden.  In contrast to Plaintiffs' detailed calculation, Defendants merely assert in conclusory fashion that the correct amount is "approximately $6.6 million"—notably *also* an estimate—even though all the information necessary to calculate UT Health Tyler's payment is in the government's

---

[3] For example, Christus Mother Frances Hospital–Tyler, a similarly sized hospital serving a similar rural population a five-minute walk (less than .5 miles) from UT Health Tyler, received an ARP Rural Payment of nearly $11 million.  *See* https://data.cdc.gov/Administrative/American-Rescue-Plan-ARP-Rural-Payments/8v6a-z6zq/explore/query/SELECT%0A%20%20%60provider_name%60%2C%0A%20%20%60city%60%2C%0A%20%20%60state%60%2C%0A%20%20%60zip%60%2C%0A%20%20%60payment%60%2C%0A%20%20%60rural_location%60%0ASEARCH%20%22MOTHER%20FRANCES%20HOSPITAL%20tyler%22/page/filter.

possession.  Resp. 14; *see* Huttinger Decl. ¶ 84 (stating that HRSA estimates the amount as "approximately $6.58 million").  A non-movant's burden on summary judgment is not satisfied by such "'unsubstantiated assertions.'"  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994)).

Plaintiffs have demonstrated entitlement to an order enjoining the government to obligate the payment amount they estimate, $9,688,199, including by showing the detailed steps by which that amount was calculated (and with which the government does not quarrel).  Because there are no disputes of material fact, the Court should enter summary judgment in Plaintiffs' favor.  Alternatively, the Court should order the government to record an obligation of $9,688,199 unless the government presents competent proof that the true amount is lower.  *See* 31 U.S.C. § 1501(a).

### B. There Is No Material Dispute Over TIN Validation

The government's brief accuses Plaintiffs of an argument they never made.  Contrary to the government's assertion, Plaintiffs neither argued that HRSA validated every subsidiary TIN, nor tried to place blame on HRSA.  Instead, Plaintiffs' motion described the green-check-mark-validation of the filing TIN—after all TINs (both filing and subsidiary) were submitted in the online portal—to explain why it took so long for the parties to discover the typographical error in the first place, and why Plaintiffs reasonably assumed that all of the TINs had passed validation.[4]  *See* Mot. 12-13.  There is no dispute of fact regarding validation.

---

[4] The government declarant describes a process whereby HRSA verified that the applicant (or, if the applicant entity is not a provider, its subsidiaries), was a known provider of Medicare, Medicaid, or CHIP.  Huttinger Decl. ¶ 22.  This process is what HRSA calls "TIN validation."  *Id.*, Ex. B (ECF No. 19-2 at 12).  Here, because the applicant entity—Plaintiff East Texas Health System—is not such a provider, only the subsidiaries would have been known providers.  Thus, although not material to Plaintiffs' case, based on HRSA's own public guidance on the two-step TIN validation process, it was reasonable for Plaintiffs to assume that the green check mark by "Validate TIN" meant that HRSA had validated *all* the provider TINs listed on the application.

### C. There Is No Material Dispute Over Denial Of Phase 4 Funds

Although Plaintiffs believed that the lump sum Phase 4 payment they received included funds for UT Health Tyler, Defendants have now advised Plaintiffs, for the first time, that UT Health Tyler's Phrase 4 application was denied. Resp. 16. HRSA never previously notified Plaintiffs of the denial, and it unclear how they would have learned given that "recipients of Phase 4 payments did not receive a letter that delineated their Phase 4 payment by billing TIN." Huttinger Decl. ¶ 46. Regardless, the government's *sub silentio* denial of UT Health Tyler's Phase 4 funding request does not help it; instead, it means Plaintiffs have a legal claim for Phase 4 funding, too.[5]

Because Plaintiffs now understand that UT Health Tyler did not receive Phase 4 funds, there is no dispute regarding that fact. Nor does that secret denial have any bearing on the relevant point: that the agency "must have known," or "with minimal effort … could have determined," UT Health Tyler's true TIN. *Commc'ns & Control, Inc. v. F.C.C.*, 374 F.3d 1329, 1336 (D.C. Cir. 2004). Indeed, UT Health Tyler, whose name was listed prominently on the application, ECF No. 15-3 at 66, 68, 69 (Ex. A to Miner Decl.), is a concededly "known provider" that received payments in Phases 1–3 as well as years of Medicare and other payments from Defendants. Miner Decl. ¶¶ 3, 6. Although the government denies that it was able to apply "careful scrutiny" to all applicant TINs, Resp. 10 n.6, it nowhere disputes that it knew—or could have easily discovered, with even minimal effort—UT Health Tyler's actual TIN.

### IV. THE PAYMENT DENIAL WAS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW

"The Defendants do not dispute that UT Health Tyler is an 'eligible health care provider' as that term is used in" the ARP. Resp. 16-17. This case thus boils down to whether a denial based

---

[5] Plaintiffs are exploring how to seek relief on the Phase 4 claim, but do not wish to delay resolution of their ARP Rural Payment claim in light of the likely rescission of funding.

on clerical errors in one digit of one hospital's 9-digit TIN, entered into an online portal alongside nine other hospitals' TINs and the parent filer's TIN, comports with the requirements of administrative law. As demonstrated by Defendants' total lack of supporting authority, it does not.

### A.  Defendants Provided No Notice That A TIN Typo Would Trigger Permanent Denial of ARP Rural Payment Funds

As Plaintiffs explained in their opening brief, an agency violates the APA by refusing to fix a mere clerical error, at least absent "full notice" that such non-substantive typos could not be fixed. *See Commc'ns and Control, Inc.*, 374 F.3d at 1336; *Trinity Marine Nashville, Inc. v. Occupational Safety and Health Rev. Com'n*, 275 F.3d 423, 430 (5th Cir. 2001) (agencies must provide clear notice before cutting off rights); *see also Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 855 (5th Cir. 2022) (agencies must act "within a zone of reasonableness").

Defendants provided no "full notice" here. They point to various statements requiring the listing of subsidiary TINs alongside the filer's TIN. *E.g.*, Resp. 6 (parties should "ensure that all TINs included in the application belong to the filing TIN"). But the fact that the "application made express reference to the TIN requirement," *id.*, is simply not "full notice" that *minor clerical errors* in those TINs would result in permanent denial. Indeed, nothing in Defendants' nearly 300 pages of exhibits—which include excerpts from HRSA's website and other public information—warns applicants that the agency would refuse to allow them to fix correct clerical errors. For the first time, HRSA now asserts it had an unpublished "longstanding policy and practice" of never correcting such errors. Resp. 21-22 (quoting Huttinger Decl. ¶ 76). But such a secret policy is hardly clear notice. *Cf. Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980) (agencies not "permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final'").

Defendants' effort to limit the "notice" rule to only where an agency's practice was to permit correction, Resp. 18-19, is unavailing. The only on-point precedent cited by either party, *Commc'ns and Control*, had *two* distinct holdings relevant here: (a) first, a bare typographical error is not adequate support for an adverse agency decision in the absence of full notice, 374 F.3d at 1335, and (b) second, that rule was "*especially*" true "in light of the Commission's practice of correcting, without much ado, typographical errors such as this one," *id.* (emphasis added). Plaintiffs ignore the first holding, as well as the Fifth Circuit's recognition that "to cut off a party's right, [it] must give full notice of its interpretation." *Trinity Marine Nashville*, 275 F.3d at 430 (quoted in Mot. 20). In fact, by omitting "internal citations and quotations," Resp. 19, Defendants excise from their lengthy quotation of *Commc'ns and Control* the key quotation on which the D.C. Circuit relied: "[F]undamental fairness ... requires that an exacting application standard, enforced by the severe sanction of dismissal without consideration on the merits, *be accompanied by full and explicit notice of all prerequisites for such consideration*." 374 F.3d at 1336 (quoting *Salzer v. F.C.C.*, 778 F.2d 869, 871 (D.C. Cir. 1985)) (emphasis added). Such "full and explicit notice" was lacking here. *Salzer*, 778 F.2d at 872.

### B. Nothing In The Statute Prohibits Fixing Clerical Errors

Defendants also argue that, because the ARP statute requires that providers list their TINs on applications, HRSA lacks statutory authority to fix clerical errors in those TINs. That is a non sequitur. Defendants confuse the statutory requirement for applicants to list TINs, which is undisputed, with the question of when an agency should permit correction of clerical errors. Because Plaintiffs did submit UT Health Tyler's TIN, albeit with one-digit clerical errors, only the latter question is at issue.

Tellingly, Defendants cite zero authority for the proposition that a statutory requirement prohibits the correction of typographical or clerical errors. The statute of limitations cases they

8

cite are inapposite. Statutes of limitations are considered part of a state's substantive law. *Beavers v. Metropolitan Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009). No amendment can cure the defect of a filing that is out of time. *Id.* In contrast, errors that are "clerical in nature, not substantive," *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 201 (5th Cir. 2011), are ordinarily fixed as a matter of course. The former mistakes are not "error[s] of judgment or legal reasoning," but rather the "type of rote, typographical error of transcription that could be committed by a law clerk or a judicial assistant." *Id.* at 194. For instance, a (nonsubstantive) clerical error in an underlying judgment does *not* affect the (substantive) time for filing a notice of appeal. *Harman v. Harper*, 7 F.3d 1455, 1457 (9th Cir. 1993).

The rule allowing clerical errors to be routinely fixed prevails in the federal courts, for both courts and litigants. *See, e.g.*, Fed. R. Civ. P. 60(a) ("Corrections Based on Clerical Mistakes"); Fed. R. Crim. P. 36 ("Clerical error."); *see also* 11 Fed. Prac. & Proc. Civ. § 2854 (3d ed.) ("The mistake correctable under [Rule 60(a)] need not be committed by the clerk or the court; the rule may be utilized to correct mistakes by the parties as well."). This district, too, allows litigants to correct defective pleadings and documents. *See* L.R. CV-10(d). Although set forth by rule, "[t]his is a power that the courts always have had." 11 Fed. Prac. & Proc. Civ. § 2854.

At least in other contexts, DOJ takes the position that this sort of clerical error can be fixed without re-filing. For example, the DOJ Criminal Resource Manual provides that "Grammar, Spelling, and Typographical Errors" in a criminal indictment do not render it invalid as long as the court and defendant can determine the essential elements of the charged crime. DOJ, Criminal Resource Manual, § 220 Grammar, Spelling, and Typographical Errors (2020), https://www.justice.gov/archives/jm/criminal-resource-manual-220-grammar-spelling-and-typographical-errors. And Defendant HHS also recently resolved a "clerical error" that had

9

resulted in the agency accidentally ending the nationwide opioid crisis for nine days. *See* Dan Diamond, *HHS forgets to renew Trump's opioid emergency declaration*, Politico (Jan. 23, 2020). In other words, it is hardly novel for agencies and courts to simply correct clerical errors; what *is* novel is the hard line that Defendants are taking, apparently for the first time publicly, in this case.

### C. To The Extent Relevant, Defendants Fail to Demonstrate Prejudice

Because the agency provided no notice that minor clerical errors would preclude payment, the agency should have allowed UT Health Tyler to fix its error. That is true regardless of the effect on the agency or other parties. After all, fixing some "clerical miscues" can "have significant effects," and even alter "the parties' rights and obligations," but that does not preclude correction. *Rivera*, 647 F.3d at 199; *see, e.g., id.* (district court can fix clerical error "even where doing so materially changes the parties' positions and leaves one party to the judgment in a less advantageous position"); *BCPeabody Construction Servs., Inc. v. United States*, 112 Fed. Cl. 502, 513 (2013) (contracting officer abused discretion in not correcting protesting bidder's clerical error, even though correction would prejudice winning bidder).

In any event, Defendants fail to show prejudice. They cite the fixed amount of appropriations for ARP Rural Payments and note HRSA received many reconsideration requests, Resp. 22, but also admit that $192 million in funds remain, which is more than sufficient to pay UT Health Tyler. It is clear that HRSA reserved these sums to allow for additional reconsideration payments *without* the need to re-calculate already-distributed funds. Defendants cite no authority obligating them to recalculate after making reconsideration payments, or otherwise preventing the use of reserved funds to pay UT Health Tyler the amount to which it is concededly eligible.

### CONCLUSION

For the foregoing reasons, the Court should enter judgment for Plaintiffs in the amount of $9,688,199, and grant such other relief as the Court deems just and proper.

10

Dated: May 14, 2023                    Respectfully submitted,

                                              /s/     Laura P. Warrick
                                              Laura P. Warrick
                                              Texas Bar No. 24079546
                                              Akin Gump Strauss Hauer & Feld LLP
                                              2300 N. Field Street, Suite 1800
                                              Dallas, TX 75201
                                              Telephone: (214) 969-4770
                                              Facsimile: (214) 969-4343
                                              lwarrick@akingump.com

                                              James E. Tysse (Lead Attorney)
                                              D.C. Bar No. 978722 (*pro hac vice*)
                                              Kelly M. Cleary
                                              D.C. Bar No. 985642 (*pro hac vice*)
                                              Caroline L. Wolverton
                                              D.C. Bar No. 496433 (*pro hac vice*)
                                              Akin Gump Strauss Hauer & Feld LLP
                                              2001 K Street, N.W.
                                              Washington, D.C. 20006
                                              Telephone: (202) 887-4000
                                              Facsimile: (202) 887-4288
                                              jtysse@akingump.com
                                              kcleary@akingump.com
                                              cwolverton@akingump.com

                                              *Counsel for Plaintiffs UT Health Tyler and East Texas Health System, LLC*

## CERTIFICATE OF SERVICE

     I hereby certify that on this 14th day of May, 2023, I filed the foregoing using the Court's CM/ECF system, which will transmit copies to counsel for Defendants, as follows:

    Assistant U.S. Attorney Sean Day, Sean.Day3@usdoj.gov
    Assistant U.S. Attorney James Gillingham, James.Gillingham@usdoj.gov

                                              /s/     Laura P. Warrick
                                              Laura P. Warrick